## Wellejus' Estate

*Walter L. Peake*, for accountant.

WAITE, P. J., January 6, 1947.—Oluf Wellejus died November 25, 1945, leaving a will executed September 14, 1944. Decedent left surviving as his next of kin two sons, Kei Wellejus and Hans Wellejus. By the terms of dedecent's will, after payment of debts and certain bequests, the remainder of decedent's estate is given and bequeathed in equal shares to the said two sons.

From an exemplification of the record of the surrogates court, Niagara County, N. Y., it appears that the son, Hans J. Wellejus, died testate in Buffalo, N. Y., on March 25, 1946, leaving the remainder of his estate, after payment of debts and funeral expenses, to his friend, May E. Grear, who was also named, and later qualified as, executrix of his estate.

The first and final account of Walter L. Peake, as executor of the estate of Oluf Wellejus, showing a balance of $17,230.88, is now before the court for audit and distribution. The audit statement filed in said estate contains the following requests:

1. "The court is asked to interpret decedent's will, article 'Fifth' thereof, as applying to the equipment

and tools in the bakery shop at 138 East Main Street, Corry, Pa. Decedent had leased the equipment and tools to Carl Moll with privilige of buying. The notes which he gave to secure the rentals were inventoried in the estate. The lease accompanied the notes." .

2. "The court is also asked to determine that inasmuch as Series E and F, U. S. Bonds cannot pass by assignment proportionate proceeds of the bonds together with proportionate interest should be allotted to the legatees of such bonds."

The fifth clause of testator's will referred to in the first above-quoted request for interpretation is as follows:

"Fifth. I give, devise and bequeath my baking shop at No. 138 East Main Street, Corry, Pennsylvania, including land, building, and all equipment and tools contained therein, unto my grandsons, Richard Wellejus and Donald Wellejus, their heirs and assigns, share and share alike, absolutely and forever."

It is to be noted that the bequest in the said fifth clause of the will includes not only the "land and building" of the property of the baking shop at 138 East Main Street, Corry, Pa., but also all equipment and tools contained therein. On November 1, 1945, 24 days before his death; and a little more than a year after the date of his will (September 14, 1944), decedent executed a chattel lease, or bailment, for the tools and equipment used in the manufacture of baking products at said 138 East Main Street, Corry, Pa., "for the term of nine months from the date hereof, for the use of such article, the said Bailee hereby agrees to pay the sum of Three thousand dollars ($3,000.00) in manner and form following: Eleven Hundred Dollars ($1,100.00) down and nine Judgment Notes, eight of the notes for Two hundred dollars ($200.00) and one for Three hundred dollars ($300.00), first note due February 1, 1946, second note due March 1, 1946, third note due April 1, 1946, fourth note due May 1,

1946, fifth note due June 1, 1946, sixth note due July 1, 1946, seventh note due August 1, 1946, eighth note due September 1, 1946, ninth note due October 1, 1946, together with six percent interest on the nineteen hundred dollars ($1,900.00)."

Said lease concludes with the following clause: "And it is further agreed that if the Bailee shall faithfully perform the conditions of this contract of bailment and shall desire to purchase the above described property, the said Bailor agrees to sell the same to him and make a bill of sale of the same for the sum of Three thousand dollars ($3,000.00), to be paid by the said Bailee to the said Bailor, and the amount received for the rent of the same shall be applied upon said purchase price."

The several notes mentioned in the said lease were subsequently paid after the death of decedent to the executor of his estate.

The particular question here involved is what effect this lease, or bailment, entered into by decedent less than a month after the execution of his will had upon the bequests of the same tools and equipment to his two grandsons, Richard and Donald Wellejus, contained in the said fifth clause of his will, and whether said bailment amounted to an ademption of said bequests.

An ademption is defined to be the extinction or satisfaction of a legacy by some act of testator, which indicates either a revocation or an intention to revoke the bequest. Generally where one with the legal title to property becomes the bailor thereof, the contract of bailment does not contemplate any change in such title, and it remains in the bailor. See 6 Am. Jur. 211, §88, citing Miller Piano Co. v. Parker, 155 Pa. 208. In our opinion the title to the above personal property referred to, both in the fifth clause of the will and in the lease, remained in testator at the time of his death and until the last of the said above referred to notes were fully paid and that, therefore, there was no ademption of the bequest to the said grandsons con-

tained in the fifth clause of the will and the entire proceeds of the sale, with the interest thereon, is distributable to the said grandsons. The inventory filed in the above estate lists a note dated November 1, 1945, in favor of decedent signed by Carl Moll, due January 1, 1946, amounting to $1,657.96. This Carl Moll is apparently the same person with whom the bailment lease was entered into by the decedent but there is nothing to show that the amount of this note was any part of the purchase price or rental of the property described in the said bailment lease. The bailment lease itself, enumerating the time and manner of payment of the notes referred to in the said lease, clearly indicates that the said note for $1,657.96, payable January 1, 1946, was not a part of the said purchase price or rental. The proceeds of this note should, therefore, be included in decedent's residuary estate and distributable to the residuary legatees named in the will.

The second clause of decedent's will disposing of decedent's United States Government bonds, is as follows:

"Second. I give and bequeath United States Government Bonds having a total maturity value of One Thousand ($1,000.00) Dollars, together with all accrued interest thereon, unto each of the following, Kei Wellejus of Jamestown, New York, Hans Wellejus of Buffalo, New York, Herbert Geiger of Erie, Pennsylvania, and Verna Hughes, of Corry, Pennsylvania."

The major portion of decedent's estate consisted of United States Savings Bonds, series E and F, purchased at various times and which said bonds are not transferrable by assignment. The executor is, therefore, directed to make sale of said bonds, having a total maturity value of $4,000, and to make an equal distribution of the proceeds thereof, including the accrued interest thereon, among the four legatees named in the said second clause of decedent's will.

The audit statement also lists a claim against the estate of General Mills, Inc., 424 Marine Trust Company Building, Buffalo, N. Y., in the amount of $36.06, which is not admitted. No proof of this claim was made at the time of the audit and it is, therefore, not allowed.

The bequests in the will given to the son, Hans Wellejus, since deceased, will be payable to May E. Grear, the executrix of his estate.

An order of distribution may be made in accordance herewith.